

**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

IAV GMBH,

Defendant.

_____/

CRIMINAL NO. 16-20394

VIOLATION:

18 U.S.C. § 371

FILED USDC - DT
2018 DEC 18 AM 10:16

## SIXTH SUPERSEDING INFORMATION

The United States Department of Justice, Criminal Division, Fraud Section, the United States Attorney's Office for the Eastern District of Michigan, and the United States Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section, charge:

## GENERAL ALLEGATIONS

1.    IAV GmbH Ingenieurgesellschaft Auto und Verkehr ("IAV") was an automotive engineering company based in Berlin, Germany, which specialized in software, electronics, and technology support for vehicle manufacturers.

2.    Volkswagen AG ("VW AG") was a motor vehicle manufacturer based in Wolfsburg, Germany.  VW AG owned fifty percent of IAV's shares and was IAV's largest customer.    Together with Audi AG and Volkswagen Group of

America, Inc. ("VW GOA"), VW AG is referred to as "VW."

3.      The purpose of the Clean Air Act and its implementing regulations was to protect human health and the environment by, among other things, reducing emissions of pollutants from new motor vehicles, including nitrogen oxides ("NOx").

4.      The Clean Air Act required the U.S. Environmental Protection Agency ("EPA") to promulgate emissions standards for new motor vehicles. The EPA established standards and test procedures for light-duty motor vehicles sold in the United States, including emission standards for NOx.

5.      The Clean Air Act prohibited manufacturers of new motor vehicles from selling, offering for sale, introducing or delivering for introduction into U.S. commerce, or importing (or causing the foregoing with respect to) any new motor vehicle unless the vehicle complied with U.S. emissions standards, including NOx emissions standards, and was issued an EPA certificate of conformity.

6.      To obtain a certificate of conformity, a manufacturer was required to submit an application to the EPA for each model year and for each test group of vehicles that it intended to sell in the United States. The application was required to be in writing, to be signed by an authorized representative of the manufacturer, and to include, among other things, the results of testing done pursuant to the published Federal Test Procedures that measure NOx emissions, and a description of the

2

engine, emissions control system, and fuel system components, including a detailed description of each Auxiliary Emission Control Device ("AECD") to be installed on the vehicle.

7.     An AECD was defined under U.S. law as "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system."  The manufacturer was also required to include a justification for each AECD.  If the EPA, in reviewing the application for a certificate of conformity, determined that the AECD "reduced the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use," and that (1) it was not substantially included in the Federal Test Procedure, (2) the need for the AECD was not justified for protection of the vehicle against damage or accident, or (3) it went beyond the requirements of engine starting, the AECD was considered a "defeat device."

8.     The EPA would not certify motor vehicles equipped with defeat devices.  Manufacturers could not sell motor vehicles in the United States without a certificate of conformity from the EPA.

9.     The California Air Resources Board ("CARB") (together with the EPA, "U.S. regulators") issued its own certificates, called executive orders, for the sale of

3

motor vehicles in the State of California.   To obtain such a certificate, the manufacturer was required to satisfy the standards set forth by the State of California, which were equal to or more stringent than those of the EPA.

10.   As part of the application for a certification process, manufacturers often worked in parallel with the EPA and CARB.   To obtain a certificate of conformity from the EPA, manufacturers were required to demonstrate that the light-duty vehicles were equipped with an on-board diagnostic ("OBD") system capable of monitoring all emissions-related systems or components.   Manufacturers could demonstrate compliance with California OBD standards in order to meet federal requirements.   CARB reviewed applications from manufacturers, including VW, to determine whether their OBD systems were in compliance with California OBD standards, and CARB's conclusion would be included in the application the manufacturer submitted to the EPA.

11.   In 1998, the United States established new federal emissions standards that would be implemented in separate steps, or Tiers.   Tier II emissions standards, including for NOx emissions, were significantly stricter than Tier I.   For light-duty vehicles, the regulations required manufacturers to begin to phase in compliance with the new, stricter Tier II NOx emissions standards in 2004 and required manufacturers to fully comply with the stricter standards for model year 2007.   These strict U.S. NOx emissions standards were applicable specifically to vehicles in the

4

United States.

12.     In the United States, VW sold, offered for sale, introduced into commerce, delivered for introduction into commerce, imported, or caused the foregoing actions (collectively, "sold in the United States") the following vehicles containing 2.0 liter diesel engines ("Subject Vehicles"):

       a.     Model Year ("MY") 2009-2015 VW Jetta;

       b.     MY 2009-2014 VW Jetta Sportwagen;

       c.     MY 2010-2015 VW Golf;

       d.     MY 2015 VW Golf Sportwagen;

       e.     MY 2010-2013, 2015 Audi A3;

       f.     MY 2013-2015 VW Beetle and VW Beetle Convertible; and

       g.     MY 2012-2015 VW Passat.

13.     VW delegated certain tasks associated with designing the EA 189 engine to IAV, including parts of software development, diesel development, and exhaust aftertreatment. IAV engineers worked closely with their counterparts at VW on various technical aspects of the design for the EA 189 engine, and met frequently at IAV's and VW's facilities regarding a variety of technical issues related to EA 189 engine design.

14.     VW GOA's Engineering and Environmental Office ("EEO") was located in Auburn Hills, Michigan, in the Eastern District of Michigan. Among other

things, EEO prepared and submitted applications (the "Applications") for a certificate of conformity and an executive order (collectively, "Certificates") to the EPA and CARB to obtain authorization to sell each of the Subject Vehicles in the United States.  VW GOA's Test Center California performed testing related to the Subject Vehicles.

## COUNT 1
### (18 U.S.C. § 371 – Conspiracy to Defraud the United States, to Commit Wire Fraud, and to Violate the Clean Air Act)

15.  Paragraphs 1 through 14 of this Sixth Superseding Information are realleged and incorporated by reference as though fully set forth herein.

16.  From at least in or about May 2006 and continuing through at least November 2015, in Oakland County, within the Eastern District of Michigan, and elsewhere, defendant IAV along with others, known and unknown to the Grand Jury, did willfully, knowingly, and deliberately combine, conspire, and confederate and did agree to:

   a.  defraud the United States by impairing, impeding, obstructing, and defeating a lawful function of the federal government, that is, the U.S. EPA's function of implementing and enforcing emissions standards for air pollutants for new motor vehicles under the Clean Air Act, by deceitful or dishonest means, in violation of 18 U.S.C. § 371;

6

b.   commit wire fraud, that is, knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmit and cause to be transmitted by means of wire, radio, and television communication, writings, signs, signals, pictures, and sounds in interstate and foreign commerce for the purpose of executing such scheme and artifice in violation of 18 U.S.C. § 1343; and

c.   violate the Clean Air Act, by making and causing to be made, false material statements, representations, and certifications in, and omitting and causing to be omitted material information from, notices, applications, records, reports, plans, and other documents required pursuant to the Clean Air Act to be filed or maintained, in violation of 42 U.S.C. § 7413(c)(2)(A).

**Purpose of the Conspiracy**

17.   The purpose of the conspiracy was for VW, IAV and their co-conspirators to unlawfully enrich themselves by, among other things, (a) deceiving U.S. regulators in order to obtain the necessary Certificates to sell the EA 189 2.0 liter diesel engine vehicles for MY 2009-2014 (collectively, the "Gen 1 Vehicles") in the United States; (b) selling the Gen 1 Vehicles in the United States knowing that

7

those vehicles did not meet U.S. emissions standards; (c) deceiving VW's U.S. customers by marketing the Gen 1 Vehicles as "clean diesel" and environmentally-friendly knowing that the diesel vehicles were intentionally designed to detect, evade and defeat U.S. emissions standards; and (d) concealing these facts from U.S. regulators and U.S. customers.

## Description of the Conspiracy

18.     From approximately May 2006 to approximately November 2015, IAV and its co-conspirators, including VW, worked on the design and calibration of engine control units containing defeat devices and agreed to defraud U.S. regulators and U.S. customers, and violate the Clean Air Act, by misleading U.S. regulators and U.S. customers about whether the Gen 1 Vehicles complied with U.S. emissions standards.  During their involvement with the design of the Gen 1 Vehicles in the United States, IAV and its co-conspirators: (a) knew that the Gen 1 Vehicles did not meet U.S. emissions standards; (b) worked collaboratively in designing, testing, implementing, and improving software they knew that VW was using to cheat the U.S. testing process by making it appear as if the Gen 1 Vehicles met U.S. emissions standards when, in fact, they did not; and (c) was aware that VW attempted to and did conceal these facts from U.S. regulators and U.S. customers.

**Overt Acts**

19.    On or about November 10, 2006, an IAV employee prepared documentation, on behalf of Volkswagen, for a software design change to what was known as the "acoustic function" that would become the "defeat device" to cheat the standard U.S. emissions tests.

20.    In or about 2006 and 2007, IAV engineers and VW engineers traveled to VW's test facility in Westlake, California, and to other locations in the United States, to conduct test drives on vehicles with the EA 189 engine, and more specifically to evaluate whether the defeat device software was operating properly. During one such trip, an IAV engineer in the United States emailed a VW manager in Germany to report on problems with the software.

21.    On or about October 31, 2013, IAV's co-conspirator, VW, through VW GOA's EEO office in Auburn Hills, Michigan, submitted the final application to EPA for Certification of the Model Year 2013 VW Jetta, Jetta Sportwagen, Golf and Beetle, and Beetle Convertible vehicles.

9

All in violation of 18 U.S.C. § 371.


MATTHEW J. SCHNEIDER
United States Attorney
Eastern District of Michigan


_____
JOHN K. NEAL
Chief, White Collar Crime Unit
Assistant United States Attorney
Eastern District of Michigan


SANDRA MOSER
Acting Chief
Fraud Section, Criminal Division
United States Department of Justice


_____
PHILIP TROUT
MARK CIPOLLETTI
Trial Attorneys


Dated: December 18, 2018


JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources
Division


_____
JENNIFER LEIGH BLACKWELL
Senior Trial Attorney



ORIGINAL.

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>16-cr-20394 |
| --- | --- | --- |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

FILED USDC – DT
2018 DEC 18 AM 10:16

| Companion Case Information | Companion Case Number: |
| --- | --- |
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: JKN |

**Case Title:** USA v. U.S. v. James Liang, et al.

**County where offense occurred :** Oakland

**Check One:**   ☒ Felony      ☐ Misdemeanor      ☐ Petty

\_\_\_\_Indictment/\_\_\_\_Information --- **no** prior complaint.

\_\_\_\_Indictment/\_\_\_\_Information --- based upon prior complaint [Case number:            ]

\_\_\_\_Indictment/\_✓\_Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 16-cr-20394          **Judge:** Sean F. Cox

☐ Corrects errors; no additional charges or defendants.

☐ Involves, for plea purposes, different charges or adds counts.

☒ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
| --- | --- | --- |
| IAV GMBH | 18 U.S.C. § 371 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

December 18, 2018
Date

*[signature]*

John K. Neal
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9644
Fax:    (313) 226-2873
E-Mail address: John.Neal@usdoj.gov
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.